## STROM v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.
April 16, 1926.)

No. 4439.

1. **Banks and banking ⊜═288½, New, vol. 11A Key-No. Series—In prosecution for aiding and abetting in abstraction of moneys from bank, evidence of earlier wrongful financial transactions of corporation, in which defendant and manager of bank were interested, held properly admitted.**

In prosecution for aiding, abetting, inciting, counseling, and procuring manager of bank, a member of Federal Reserve System, to fraudulently abstract moneys from bank, where defendant denied that he knew character of transaction as testified to by bank manager, *held*, evidence of earlier wrongful financial

transactions of corporation in which they were both interested with the bank was admissible.

2. **Witnesses ⊜═405(2)—In prosecution for procuring manager to fraudulently abstract moneys from bank, member of Federal Reserve System, testimony of defendant concerning prior transactions held not as to collateral matters, and contradictory testimony properly received for purpose of impeachment.**

In prosecution for aiding and abetting and procuring manager of bank, member of Federal Reserve System, to fraudulently abstract moneys of bank, where evidence of prior transactions was admissible as affecting defendant's knowledge and intent, *held*, cross-examination of defendant concerning such matters was not cross-examination as to collateral matters, and hence testimony of disinterested witness, contradicting certain parts of his testimony on cross-examination, was properly received in rebuttal for purpose of impeachment.

3. **Criminal law ⊜═1172(2)—Refusal to charge that evidence of general reputation for honesty and integrity might be sufficient to raise reasonable doubt, if error, held not prejudicial, in view of evidence.**

In prosecution for aiding, abetting, and procuring manager to abstract moneys from bank, member of Federal Reserve System, refusal to charge that evidence of general reputation for honesty and integrity might alone be sufficient to raise a reasonable doubt, if error, *held* not prejudicial, in view of evidence.

4. **Criminal law ⊜═1172(7)..**

Any error in instructing that it was of no importance whether accused profited by fraud on branch bank of Federal Reserve *held* immaterial, where defendant unquestionably profited thereby.

In Error to the District Court of the United States for the Western District of Michigan; C. W. Sessions, Judge.

Edward B. Strom was convicted of aiding, abetting, inciting, counseling, and procuring the manager of a bank, then a member of the Federal Reserve System, to fraudulently abstract the moneys of the bank, and he brings error. Affirmed.

Certiorari denied 46 S. Ct. 634, 70 L. Ed. —.

Myron H. Walker and Arthur F. Shaw, both of Grand Rapids, Mich., for plaintiff in error.

Howard A. Ellis, Asst. U. S. Atty., of Grand Rapids, Mich. (Edward J. Bowman, U. S. Atty., of Grand Rapids, Mich., on the brief), for the United States.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. Strom was convicted under an indictment charging him with aiding, abetting, inciting, counseling,

and procuring Himmler, the manager of a bank then a member of the Federal Reserve System, to abstract the moneys of the bank by fraudulently paying Strom $3,000 out of the bank's funds for the use and benefit of Strom and others named. The testimony of Himmler, who, after having pleaded guilty as principal, was produced as a witness for the government, sufficed clearly to establish the guilt of each of them.

Himmler, a branch bank manager, Strom, a friend and depositor, and others were associated in certain business corporations of which Strom was also the attorney. Himmler and Strom, together with another interested party, joined them in a guaranty of a corporate debt. Judgment for $2,900 and costs went against them as guarantors. Garnishment proceedings were begun in their home town. Their bank accounts were tied up. Himmler, after conference with Strom, took $3,000 in currency from the bank and gave it to Strom, who settled the judgment by payment of $2,900, without the costs. Both testified that currency was used, instead of a check, in the hope that Strom might be able to effectuate a settlement for a lesser amount. Himmler testified in substance that Strom, knowing that Himmler had theretofore illegally taken the bank's money for the benefit of their corporation, and that there was then a shortage resulting therefrom, said "that we were already this old shortage in the bank, and it was absolutely necessary to take care of this amount." Strom denied the statement, and testified that he believed Himmler was advancing the money from his own funds, one-half to be repaid by Strom when able so to do. The jury believed Himmler's version, and under the charge necessarily found that Strom knew of, and by the payment of the judgment intended to and did benefit by, the illegal abstraction of the bank funds.

[1] 1. In the light of this conflict as to Strom's knowledge of the nature of Himmler's act and of his intent, the court properly admitted evidence of earlier wrongful financial transactions of the corporation, through Himmler, with the bank, resulting in this shortage, and as to which Himmler testified Strom had personal knowledge.

[2] 2. Strom on direct examination contradicted Himmler on vital points in reference to these earlier transactions. His testimony on cross-examination thereon was not as to collateral matters, inasmuch as the entire testimony in relation thereto was admissible for its bearing on his knowledge and intent.

Testimony by a disinterested witness, contradicting certain parts of his testimony, was therefore properly received in rebuttal to impeach his credibility.

[3] 3. Evidence of Strom's good reputation for honesty supplemented his own recital of his life history, his excellent war service, eventuating in his appointment as a major, his control of government funds during that period, his subsequent admission to the bar and election to the Legislature, as well as his version of his connection with this and other of the corporation's transactions concerning which Himmler had testified. The jury had the opportunity, therefore, of determining, not only on their statements, but also from their manner of testifying, where, as between Strom and Himmler, the truth lay as to Strom's knowledge, motives, and intents. If they believed Himmler, conviction was justifiable. His testimony was supported by a chain of circumstances difficult, in view of Strom's connection with the transactions, to reconcile with ignorance of Himmler's wrongdoing and with lack of intent to abet the same.

A careful review of the evidence satisfies us that the refusal to expand the general character evidence charge by adding thereto specifically that the evidence of general reputation for honesty and integrity "may be sufficient in itself to raise a reasonable doubt," even if erroneous—Edgington v. U. S., 164 U. S. 361, 17 S. Ct. 72, 41 L. Ed. 467; Egan v. U. S., 287 F. 958, 52 App. D. C. 384; Hermansky v. U. S. (C. C. A. 8) 7 F.(2d) 458. But see Kreiner v. U. S. (C. C. A. 2) 11 F.(2d) 722, March 8, 1926, and cases cited; Thompson v. U. S. (C. C. A. 7) 10 F.(2d) 781, January 2, 1926—was not, in the circumstances, so substantially prejudicial as to require a reversal. Wellman v. U. S. (C. C. A. 6) 297 F. 925.

[4] 4. It is unnecessary to consider, as bearing on Strom's intent to abet the fraud on the bank, the alleged error in charging the jury that it is of no importance whether Strom profited in any way in the transactions which he had with and concerning the corporation. We say this because Strom necessarily profited directly by the payment of the judgment against him, and that irrespective of whether or not judgment was erroneous, or involved a moral as well as a legal obligation. As to the earlier transactions, his personal profit or lack of it is immaterial. The corporations in which he was interested clearly profited hereby.

5. The charge was complete, and pre-

sented to the jury clearly and fairly the essential issues in the case. We have fully considered the further objections thereto, and to the refusal to give certain additional charges, and find the exceptions without merit. Holt v. U. S., 218 U. S. 245, 253, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138, has limited the effect of Coffin v. U. S., 156 U. S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481. See 5 Wigmore Evidence (2d Ed.) § 2511.

Judgment affirmed.