**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alice MILLS, Defendant-Appellant.**

**No. 16673.**

United States Court of Appeals
Sixth Circuit.

Sept. 15, 1966.

Don L. Hanni and Jack W. Nybell, Youngstown, Ohio, for appellant, Thomas P. Wellman, Youngstown, Ohio, on the brief.

Nathaniel R. Jones, Asst. U. S. Atty., Cleveland, Ohio, for appellee, Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, on the brief.

Before WEICK, Chief Judge, and PHILLIPS and CELEBREZZE, Circuit Judges.

PHILLIPS, Circuit Judge.

Appellant was convicted on two counts of an indictment charging conspiracy and the substantive offense of transporting a girl in interstate commerce for purposes of prostitution, in violation of 18 U.S.C. § 2421. One co-defendant, Ted Jackson, plead guilty. The jury returned a verdict of not guilty as to the other co-defendant. Appellant was sentenced to imprisonment of five years on the first count and three years on the second count, the sentences to run consecutively.

The girl was a fourteen year old high school freshman, residing in Pennsylvania. She met Jackson, a saxophone player, at a bar, and began to have dates with him. Thereafter the girl traveled by bus from Pennsylvania to Ohio and went to one of two "boarding houses" operated by appellant in Youngstown.

The girl testified that she engaged in prostitution at this "boarding house," paying board to appellant and sharing with appellant an agreed percentage of the money received from her activities.

Jackson purchased the bus ticket for the transportation of the girl from Pennsylvania to Youngstown. There was evidence from which the jury could have concluded that appellant arranged to have $15.00 wired to Jackson which was used for the purchase of this bus ticket, and that appellant had a long distance telephone conversation with Jackson concerning the details of the arrangement prior to the arrival of the girl in Youngstown.

Jackson testified that appellant previously had asked him if he knew any "working girls" and that: "She gave me her telephone number and if I should happen to meet any girls that were working or that were prostitutes, she told me where she could be reached."

On this appeal appellant contends that there was a fatal variance between the indictment and the evidence, and that the district judge committed certain reversible errors in the conduct of the trial. No question is raised as to the sufficiency of the evidence to sustain the verdict of the jury; therefore no further recitation of the evidence is necessary in this opinion.

**1) Variance between indictment and evidence**

We deal first with the contention that there was a fatal variance between the indictment and the evidence. The indictment charged that the three named defendants:

"wilfully and knowingly did combine, conspire, confederate, and agree to commit an offense against the United States, that is, to knowingly transport and cause to be transported in interstate commerce, from Scranton, Pennsylvania to Youngstown, Ohio, a girl (name of girl omitted here) for the purpose of prostitution, or with the intent and purpose to induce, entice or compel such girl to become a prostitute, in violation of Title 18, Section 2421, United States Code."

The indictment further charged as follows:

"At the times hereinafter mentioned, the defendants committed the following overt acts in furtherance of said

conspiracy and to effect the objects thereof:

"1. On or about May 1, 1964, Ted Jackson and Alice Mills had a long distance telephone conversation between Scranton, Pennsylvania and Youngstown, Ohio.

"2. On or about May 2, 1964, Alice Mills and George Winford, Jr. telegraphed $15.00 from Youngstown, Ohio, to Ted *Mason* (emphasis supplied) in Scranton, Pennsylvania.

"3. On or about May 2, 1964, Ted Jackson, in Scranton, Pennsylvania, purchased a Greyhound Lines bus ticket for (name of girl omitted here) from Scranton, Pennsylvania, to Youngstown, Ohio; in violation of Title 18, Section 371, United States Code."

The second count of the indictment charged appellant with the substantive offense of transporting the girl from Scranton, Pennsylvania, to Youngstown, Ohio, for the purpose of prostitution, or with the intent and purpose to induce, entice or compel the girl to become a prostitute. The third count charged Ted Jackson with the same substantive offense.

The name "Ted Mason" in the indictment was a typographical error. There is no evidence in the record as to any transactions with a "Ted Mason." The mention of "Ted Mason" clearly was intended to refer to "Ted Jackson," whose name appeared as a defendant at four other places in the indictment.

Appellant filed a motion to dismiss the indictment because of this variance, which motion was overruled by the district court. The district judge charged the jury as follows concerning this typographical error:

"In the first count, the second overt act is—'No. 2. On or about May 2, 1964 Alice Mills and George Winfield, Jr.' * * * that is simply a typographical error, and while the Indict-

ment reads George Winfield, Jr., it is amended to read Charles Winford, Jr., and as I said, it is simply a typographical error—and it goes on to say —'They telegraphed $15.00 from Youngstown, Ohio to Ted Mason in Scranton, Pennsylvania'. Now, gentlemen of the jury, in the second overt act it says they telegraphed $15.00 to Ted Mason and for your purpose and for your consideration you will consider this to be 'Ted Jackson'.

"Now, Overt Act No. 2 goes on, and I will read it correctly, it says, 'No. 2. On or about May 2, 1964, Alice Mills and Charles Winford, Jr., telegraphed $15.00 from Youngstown, Ohio to Ted Jackson in Scranton, Pennsylvania.' Now, that is the second overt act charged in the Indictment. Again, while the Indictment reads in the second overt act, George Winfield, Jr., for your purposes that means Charles Winford, Jr., for the defendant. It also reads telegraphed to 'Ted Mason' and for your purposes of considering the guilt or innocence of the accused, that means 'Ted Jackson'."

■ A variance is not to be regarded as material where it is not of a character which could have mislead the defendant at the trial, Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314; or where it involves no element of surprise prejudicial to the efforts of the defendant to prepare his defense, United States v. Ragen, 314 U.S. 513, 526, 62 S.Ct. 374, 86 L.Ed. 383, rehearing denied, 315 U.S. 826, 62 S.Ct. 620, 86 L.Ed. 1222; or where it does not affect substantial rights. Rule 52(a), F.R. of Crim.P.; cf. United States v. Haskins, 345 F.2d 111, 114 (C.A.6). "Whether or not a variance is prejudicial is a judgment that must be made on the facts of each case." United States v. Russano, 257 F.2d 712, 715 (C.A.2).

■ There is nothing in the record in the present case to indicate that appellant was surprised, mislead or prejudiced in any way by the reference to

"Ted Mason" in the indictment. The identity of Ted Jackson with the case was well known to appellant at the time the indictment was returned.

We find the contention of appellant concerning the variance between the indictment and the evidence to be without merit.

## 2) Time limitation on closing argument

Appellant next contends that, in view of the length and complexity of the trial, the district judge erred in restricting the time for argument by her attorney to thirty-five minutes.

■ As stated by this court in Wagman v. United States, 269 F. 568, 573–574 (C.A.6), cert. denied, 255 U.S. 572, 41 S.Ct. 376, 65 L.Ed. 792: "The court has undoubted right to limit argument within the bounds of a reasonable discretion." See also Kolp v. United States, 2 F.2d 953 (C.A.6). The cases on this subject are collected in a recent annotation, Propriety of Court's Limitation of Time Allowed Counsel for Summation or Argument in Criminal Trial, 6 A.L.R.3d 604, in which the following summary is stated:

"There is a generally recognized principle of law that the trial court has the power, in its discretion, to limit the time to be occupied by counsel in argument. Where the trial court has been held to have abused its discretion in limiting the time of argument, such action is generally considered to have violated the constitutional right of the accused to be heard by himself or by counsel.

\* \* \* \* \* \*

"For an appellant to secure a reversal of judgment, or a new trial, on the ground that the time allowed for argument was insufficient, there is considerable authority to the effect that the counsel must not only take a general exception to the ruling limiting argument, but must state to the court the reasons for the exception, indicating that the time allotment would be insufficient for an adequate discussion of the case, and must, further, use up the time allotted him, and after such use, ask for an extension of time, stating at that time that such extension is necessary for the proper presentation of the case." 6 A.L.R.3d at 608–609.

■ In support of his contention that the time limit of thirty-five minutes was unreasonable, appellant points out that the trial extended over a period of five days, included the testimony of seventeen witnesses, and required a transcript of 518 typewritten pages, and that the same attorney represented both defendants. However, we do not reach this question, because the record does not disclose that counsel requested a longer period of time for argument. The following appears immediately preceding the charge of the court to the jury:

"COURT: Now gentlemen, I believe thirty-five minutes for each side to give their closing argument is sufficient.

"MR. JONES: Yes, Your Honor.

"MR. NYBELL: Yes.

"COURT: Gentlemen of the jury, the attorneys will now make what are known as final statements or closing arguments. These statements as in the case of opening statements are not evidence, and are not to be considered by you as evidence in any way.

"Whereupon counsel gave their closing arguments."

In view of the fact that counsel did not request additional time or object to the limitation as fixed by the district court, we cannot say that the limitation of thirty-five minutes was an abuse of discretion.

## 3) Restriction of cross-examination

Further appellant contends that the district judge erred in restricting the scope of cross-examination of government witnesses by defense counsel.

It is well settled that a full cross-examination of a witness upon the subjects of his examination in chief is an absolute right, and not the mere privilege of the party against whom he is called. The denial of this right is reversible error. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; Spaeth v. United States, 232 F.2d 776 (C.A.6); Sandroff v. United States, 158 F.2d 623 (C.A.6), 174 F.2d 1014, cert. denied, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584; Lindsey v. United States, 77 U.S.App. D.C. 1, 133 F.2d 368; Farkas v. United States, 2 F.2d 644 (C.A.6); Heard v. United States, 255 F. 829 (C.A.8).

However, as said by Mr. Justice Stone in Alford v. United States, supra, 282 U.S. at 694, 51 S.Ct. at 220:

"The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted."

To like effect see Poliafico v. United States, 237 F.2d 97, 111 (C.A.6), cert. denied, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597, rehearing denied, 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 725.

In the present case the record reveals that counsel for appellant conducted extended cross-examination of government witnesses. In three instances the district judge shut off a continuation of extended cross-examination into collateral and immaterial matters. There is no showing that appellants' counsel was deprived of the right of full cross-examination. Although the shutting off of cross-examination is not a practice to be encouraged, we cannot say that the trial judge abused his discretion in the present case.

All other contentions made by appellant have been considered and are found to be without merit.

Affirmed.