**ROSEBOROUGH v. UNITED STATES.**

No. 1125.

Municipal Court of Appeals for the District of Columbia.

Argued Dec. 3, 1951.

Decided Jan. 17, 1952.

Rehearing Denied Feb. 25, 1952.

4. No argument as to entrapment has been made on this appeal.

Curtis P. Mitchell, Washington, D. C., for appellant.

William B. Bryant, Asst. U. S. Atty., Washington, D. C. (Charles M. Irelan, U. S. Atty., Joseph M. Howard and William F. Becker, Asst. U. S. Attys., all of Washington, D. C., were on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was charged and convicted of possession of lottery slips.[1] The circumstances were briefly as follows: On the afternoon of April 2, 1951, several police officers, together with a United States marshal, arrested a man for whom they had a warrant. In the course of this arrest the police officers entered a novelty store looking for a second unnamed person for whom they also had a warrant. There were several persons in the store at that time, one of whom was the appellant. One of the officers went outside the store and searched the automobile of the man arrested. Upon returning he noticed a man's billfold lying in the front window of the store "up between the Coca Cola cases and the window." He picked it up and examined it. Inside he found an identification card with the name of "Ralph Roseborough" and a quantity of numbers slips. He sought to identify the owner, and the defendant admitted that it belonged to him. He was then arrested and charged with possession of lottery slips in violation of the statute.

At the trial defendant objected to the introduction of these slips, contending that they had been illegally seized. The court admitted them in evidence.. They were properly identified by the arresting officer as numbers slips and they were undated. At the end of the government's case the defendant made a motion to dismiss on the ground of illegal search and seizure and that the slips being undated did not constitute lottery slips under the statute. This motion was denied. Such denial is assigned as error. The billfold when picked up by the officer was presumably lost or abandoned property.[2] Upon discovering that it contained numbers slips, the possession of which constituted a crime, it was the right of the officer to determine the owner and to arrest him. When appellant admitted his ownership, no warrant for his arrest was necessary.[3] This was not an arrest justified by a search, but an arrest based upon the discovery of lottery slips which admittedly belonged to appellant, and he was arrested for the commission of a

---

1. Code 1940, § 22–1502: "If any person shall within the District have in his possession, knowingly, any ticket, certificate, bill, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed. for the purpose of playing, carrying on, or conducting any lottery, or the game or device commonly known as policy lottery or policy, he shall be fined upon conviction of each said offense not more than $500 or be imprisoned for not more than six months, or both."

2. Code 1940, § 4–152: "All property, or money alleged or supposed to have been feloniously obtained, or which shall be lost or abandoned, and which shall be thereafter taken into the custody of any member of the police force, or the police or criminal court of the district, or which shall come into such custody, shall be, by such member, or by order of the court, given into the custody of the property clerk and kept by him."

3. Code 1940, § 4–140; Hoover v. District of Columbia, D.C.Mun.App., 42 A.2d 730.

crime in the officer's presence. So much for the question of alleged illegal search and seizure.

 The remaining question is more difficult. Must an undated lottery ticket be proven to be a "live" ticket as a part of the government's case in order to constitute the offense charged in the statute?[4] The defendant contends that it must be shown that such a ticket in order to fall within the statute must be one that shows it is a chance on a lottery *yet* to be run and that once the particular lottery is over such ticket ceases to be a lottery ticket within the purview of the statute. We hold the evidence proven by competent testimony was prima facie indicative that possession of such ticket is violative of the law. The burden of going forward with the evidence then shifts as a consequence to the defendant to prove the contrary.[5] For who would know better than the possessor of such ticket that it was not in fact a lottery ticket? In construing a similar statute the Supreme Court has said: "The policy slips are property of an unusual character, and not likely, particularly in large quantities, to be found in the possession of innocent parties. Like other gambling paraphernalia, their possession indicates their use or intended use, and may well raise some inference against their possessor, in the absence of explanation. Such is the effect of this statute. Innocent persons would have no trouble in explaining the possession of these tickets, and in any event the possession is only prima facie evidence, and the party is permitted to produce such testimony as will show the truth concerning the possession of the slips." Adams v. People of State of New York, 192 U.S. 585, 24 S.Ct. 372, 375, 48 L.Ed. 575.

On the basis of the above, we feel that this case should be and it is hereby

Affirmed.

---

4. Smith v. United States, 70 App.D.C. 255, 257, 258, 105 F.2d 778, 780, 781. There the court said: "While the language of the statute is broad and speaks of any ticket 'used * * * for the purpose of * * * conducting any lottery,' we are not disposed to hold that a dead or expired lottery ticket would satisfy the statute." On motion of the United States for modification of the opinion, the court said: "The present motion indicates a desire to have us pass upon and decide a question which we found to be unnecessary in the decision of the case. This we decline to do. When the question is properly before us, we shall rule upon it."

5. Cf. Morrison v. People of State of California, 291 U.S. 82, 54 S.Ct. 281, 78 L. Ed. 664; Bradford v. United States, 5 Cir., 129 F.2d 274, 130 F.2d 630, certiorari denied 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547; Brown v. United States, D.C. Mun.App., 66 A.2d 491.