(72 App. Div. 67.)

### PEOPLE ex rel. WILSON v. FLYNN, Warden.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

1. GAMING—PROSECUTION—STATUTES—RULE OF EVIDENCE.

The Penal Code provides that many different, enumerated acts (among them, the selling of any paper in the nature of a wager on the drawing of numbers) shall constitute the offense of being a common gambler; and section 344b provides that possession by any one, other than an officer, of any writing, etc., used in playing policy, shall be presumptive evidence of possession thereof knowingly and in violation of section 344a. Held, that a contention that, if 344b was unconstitutional, no conviction for dealing in policy could be had under section 344a, because the rule established by section 344b was essential to conviction, was of no merit; it being permissible to convict one as a common gambler without resort to section 344b.

2. SAME—POSSESSION OF MATERIALS—STATUTORY PRESUMPTION—CONSTITUTIONALITY

Pen. Code, § 344a, provides that any one who sells or offers to sell what are called "lottery policies" is a common gambler; and section 344b makes the possession of any paper, writing, etc., used in playing policy, presumptive evidence of their possession knowingly, in violation of section 344a. Held, that 344b is not unconstitutional, on the theory that the articles used in policy are in common and legitimate use, since, in order to convict, even with the aid of that section, it must be shown that the possession of the articles has a fair relation to the offense.

Appeal from special term, New York county.

Habeas corpus by the people, on the relation of John Wilson, against William Flynn, as warden of the city prison of the city of New York, to secure relator's release from custody. From an order adjudging the detention lawful (74 N. Y. Supp. 731), relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William W. Cantwell, for appellant.

Henry G. Gray, Dep, Asst. Dist. Atty., for respondent.

HATCH, J. It appears by the petition of the relator, and the proceedings had upon the hearing on the return to the writ, that the relator was held in custody by virtue of a commitment charging him with violating section 344a of the Penal Code. The offense which is defined by such section is that of being a common gambler. No question is raised upon this appeal respecting the sufficiency of the complaint made before the magistrate, or of the proceedings which were had before him, or of the sufficiency of the commitment issued by the magistrate, and no such question was raised before the court below upon the hearing had on the return to the writ. Consequently we are not required to consider any question arising therein, even though error might have been predicated thereon. Whether such proceeding and papers conformed to the requirements of the law is not presently of consequence, as no defects are claimed to exist therein.

The relator takes the single point that section 344b of the Penal Code is unconstitutional, and that as this section is to be construed

in connection with section 344a, and the rule established by section 344b is essential to be invoked in order to procure the indictment and conviction of the relator, as it is unconstitutional no offense is established to exist against the relator. It is to be observed that section 344a provides that many different acts done or suffered to be done by a person shall constitute the offense of being a common gambler. Section 344b does not, either in terms or otherwise, define any offense. It simply provides a rule of evidence to be applied where the defendant is charged with playing the game of policy, but of itself it neither creates nor defines any offense. It is quite permissible for the public prosecutor to procure an indictment, and also a conviction, for the offense of being a common gambler, as specified in section 344a, without resort to the rule of evidence prescribed in section 344b. He may prove such offense by common-law evidence of the matters and things which constitute the crime, and the relator would not be aggrieved or be entitled to his discharge from custody by reason thereof upon this application, even though it be conceded that the provision of section 344b is unconstitutional.

In view of the fact that a determination as to the constitutionality of the act is necessary for the guidance of the trial court, we have examined the section, and conclude that it does not invade any constitutional right possessed by the relator. The section reads as follows:

"The possession, by any person other than a public officer, of any writing, paper or document representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called 'policy,' or in the nature of a bet, wager or insurance upon the drawing or drawn numbers of any public or private lottery, or any paper, print, writing, numbers or device, policy slip or article of any kind, such as is commonly used in carrying on, promoting or playing the game commonly called 'policy,' is presumptive evidence of possession thereof knowingly and in violation of the provisions of section three hundred and forty-four 'a.' "

An examination of section 344a shows that the papers and materials specified in section 344b are required to be used in connection with a building, place, room, table, establishment, or apparatus for policy playing, or for the sale of what are called "lottery policies." It is the claim of the relator that the materials used in and about the playing of policy are such articles as are in common use, and legitimate business and trade are carried on in the same by mercantile establishments for various purposes, and that the use of such articles is common and legitimate by the inhabitants of the state. Undoubtedly such condition is true, but the possession or use of these articles disconnected from their use in playing the game is not made an offense under the provision of 344a; nor does the rule of evidence established by 344b apply to such a condition; nor is there anything used in the language of both sections, construed together, to indicate an intent upon the part of the legislature to provide a rule of evidence applicable to such conditions. On the contrary, by express language reference is made to the existence of conditions which define the offense, and acts to be done constituting it, in section 344a. It is manifest, therefore, that the rule provided in section 344b can only be applied when the articles are found under

such circumstances and conditions as indicate that they may have been used in violation of the prior section; and, in order that the people may avail themselves of the provision of section 344b, it must be made to appear that the articles were in use in connection with the place used for doing the prohibited acts, or that a fair inference arose from the circumstances surrounding the possession that they were or might have been unlawfully used. Under such circumstances, there is an evident relation between the offense prescribed in the first section, and the rule of evidence established by the second. It is erroneous, therefore, to say that the mere possession by a merchant dealing in these articles, or of a citizen having them in his possession for lawful use, is subject to the rule of evidence prescribed in the last section. The people must go farther, and show a relation as to the principal fact, viz., the existence of a condition from which it may be fairly inferred that the articles may have been used in violation of the provisions of the section defining the offense. It is settled by decisive authority that the legislature has power to enact a provision providing a rule of evidence both in civil and criminal cases (Board v. Merchant, 103 N. Y. 143, 8 N. E. 484, 57 Am. Rep. 705); and where a rule is adopted which leaves a party fair opportunity to make his defense, and permits the submission to the jury of all the facts, to be weighed by them, such act cannot be assailed upon constitutional grounds. The limitation of the power of the legislature in respect of such a question is clearly defined in People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 Am. St. Rep. 668. Therein the court, speaking through Judge Peckham, says:

"It cannot be disputed that the courts of this and other states are committed to the general principle that even in criminal prosecutions the legislature may, with some limitations, enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question. * * * The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with, the main fact. The inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary, or wholly unreasonable, unnatural, or extraordinary; and the accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence, and given such weight to the presumption as to it shall seem proper. A provision of this kind does not take away or impair the right of trial by jury. It does not in reality and finally change the burden of proof. The people must at all times sustain the burden of proving the guilt of the accused beyond a reasonable doubt. It, in substance, enacts that, certain facts being proved, the jury may regard them, if believed, as sufficient to convict, in the absence of explanation or contradiction. Even in that case the court could not legally direct a conviction."

This language finds precise application, and is decisive in answer to the contention of the relator. The mere possession of the articles upon which the presumption is founded must bear fair relation to the commission of the offense. So construed, the section in question infringes no constitutional right of which the relator is possessed.

It follows from these views that the order should be affirmed. All concur.